## The COMMONWEALTH *against* TAYLOR.

### IN ERROR.

1812.

*Chambersburg,*
*Monday,*
*Oct. 5.*

THE defendant was indicted in the Quarter Sessions of " Franklin county for " that he, on the 24th of *August* " 1809, about the hour of ten of the clock *in the night* of ".the same day, *with force and arms* at *Lurgan* township, in " the county aforesaid, the dwelling house of *James Strain* " there situate, unlawfully, maliciously, and *secretly* did " break and enter, with intent to disturb the peace of the " commonwealth; and so being in the said dwelling house, " unlawfully, vehemently, and turbulently *did make a great* " *noise*, in disturbance of the peace of the commonwealth, " and greatly misbehave himself, in the said dwelling house; " and *Elizabeth Strain*, the wife of the said *James* greatly " did frighten and alarm, by means of which said fright and " alarm she the said *Elizabeth*, being then and there preg- " nant, did on the 7th day of *September* in the year afore- " said at the county aforesaid miscarry, and other wrongs " to the said *Elizabeth* then and there did, to the evil ex- " ample, &c."

An indictment charged that *A* unlawfully, se- cretly, and mali- ciously, with force and arms, broke and enter- ed *at night* the *dwelling house* of *B*, with intent to disturb the peace of the commonwealth; and after enter- ing the house, unlawfully, wil- fully, and turbu- lently, *made a great noise* in dis- turbance of the peace of the commonwealth, and did greatly misbehave in the said dwell- ing house, and did greatly frighten and alarm the wife of the said *B*, whereby she miscarried &c. *Held*, that the offence laid was indictable as a *misdemeanour. Quere* whe- ther the indict- ment could be supported as describing a *for- cible entry.*

The jury having found the defendant guilty, the Quarter Sessions arrested the judgment, upon the ground that the offence charged was not indictable; and the record was brought up to this Court by writ of error.

*Maxwell* and *Duncan* contended that the offence laid was indictable. 1. As a forcible entry. 2. As a malicious mis- chief.

1. It is a forcible entry for which an indictment may be maintained, at common law. *Vi et armis* does not in a com- mon case imply the requisite force; but here the entry is into a *dwelling house*, with intent to disturb, and in actual dis- turbance of the peace, which brings it within *The King* v. *Bathurst* (*a*). The distinction between a *close*, or *yard*, and a *dwelling house*, is pointedly taken in *The King* v. *Storr* (*b*),

(*a*) 3 *Burr.* 1699.          (*b*) 3 *Burr.* 1698.

and in *The King* v. *Bake* (a). The time of night, and the turbulence of the party, are strong circumstances in the case.

2. But it is clearly a malicious mischief. The offence described is a wanton malicious injury to the peace of a family, perpetrated in the night, accompanied with great noise, and ending in a severe personal injury to the wife of the prosecutor. It is indictable from the *malicious motive*, which was to disturb the peace, the *means*, which were turbulence, vehemence and noise in the night time, the *tendency*, which was to excite the family to violent acts of resentment, and the *effects*, which were the fright and miscarriage of the wife. A great noise with a speaking trumpet, to the disturbance of the neighbourhood, is indictable as a nuisance. *Rex* v. *Smith* (b). The King's Bench refused to quash an indictment for unlawfully and violently knocking at the door of the prosecutor for two hours, whereby his wife was frightened and miscarried. *Rex* v. *Hood* (c). So for unlawfully entering a house, and p——g on the floor when the wife of the prosecutor was present. *Rex* v. *Rollo* (d). In the *Commonwealth* v. *Teischer* (e), an indictment was supported for maliciously, wilfully, and wickedly killing a horse. Any offence is indictable which is malicious, mischievous, and of public evil example; all of which is charged of the offence in question. *Crown Circuit Comp.* 696., 3 *Bac.* 549. *A. Indictment.*, *U. States* v. *Ravara* (f). 4 *Blac. Comm.* 243.

*Dunlop* and *Watts contra.* No case has carried the law so far as is now attempted. This is a mere private injury, in which the public are not at all concerned, in point either of injury or example.

1. It cannot be supported as a forcible entry. To constitute that offence, there must be actual violence; and it must either be laid to be done *manu forti*, or the circumstances stated must imply force. The common allegation of *force and arms* is not sufficient. It was so held in *Rex* v. *Storr*, and *Rex* v. *Bake*. In *Rex* v. *Bathurst*, which was an entry into a dwelling house, it was not this circumstance which

| | |
|---|---|
| (a) 3 *Burr.* 1731. | (d) *Say.* 158. |
| (b) 1 *Stra.* 704. | (e) 1 *Dall.* 335. |
| (c) *Say.* 167. | (f) 2 *Dall.* 297. |

governed the court. The indictment stated that the prose-
cutor was kept out of possession by three persons, which
implied force. Here, not only is any thing of that kind
wanting, but the offence is laid to have been committed
secretly, which negatives actual force.

2. It is not good as an indictment for malicious mischief.
All the cases cited from the *English* books, are cases of
public offences, or of motions to quash, on which the courts
exercise a discretion; but when the motion is in arrest of
judgment, they must decide according to law. *Rex* v. *Wheatly*
(*a*). The present count is too uncertain. A mere intent to
disturb the peace of the commonwealth, or the charge of an
actual disturbance without saying how, will not answer.
The allegation is of misbehaviour without saying in what
manner particularly, and of noise, vehemence and turbu-
lence, without describing the manner in which it was pro-
duced. In *Rex* v. *Hood* it was by violently knocking at the
prosecutor's door. In *Rex* v. *Smith* by using a speaking
trumpet. The latter was a public nuisance. In the former,
though the indictment was not quashed, it does not appear
that judgment was ever given. In the *Commonwealth* v.
*Teischer*, the offence of maliciously killing a horse was pub-
lic and of evil example. Divesting this offence of the words
of aggravation with which the indictment is loaded, and it
becomes a mere entry without force into a dwelling house,
and there making a noise. It is a trespass punishable in
damages to the extent of the injury, but not by fine and
imprisonment.

TILGHMAN C. J. It is contended on the part of *James
Taylor*, that the matter charged in the indictment is no
more than a private trespass, and not an offence subject to a
criminal prosecution. On the other hand it has been urged
for the commonwealth that the offence is indictable; 1st, as
a forcible entry,—2d, as a malicious mischief.

1. I incline to the opinion that the matter charged in the
indictment does not constitute a forcible entry, although no
doubt a forcible entry is indictable at common law. There
must be actual force to make an indictable offence. The

1812.

COMMON-
WEALTH
v.
TAYLOR.

(*a*) 2 *Burr.* 1129.

1812.

COMMON-
WEALTH
*v.*
TAYLOR.

bare allegation of its being done with force and arms, does not seem to be sufficient; for every trespass is said to be with force and arms. In the *King* v. *Storr*, 3 *Burr.* 1698, the indictment was for unlawfully entering his yard and digging the ground and erecting a shed, and unlawfully and with force and arms putting out and expelling one Mr. *Sweet* the owner from the possession, and keeping him out of the possession. This indictment was quashed. The *King* v. *Bake and fifteen others*, 3 *Burr.* 1731, was an indictment for breaking and entering with force and arms, a close (not a dwelling house), and unlawfully and unjustly expelling the prosecutors, and keeping them out of possession. This also was quashed, and the rule laid down by all the court, was, that there must be force or violence shewn upon the face of the indictment, or some riot or unlawful assembly. It appears indeed that in the *King* v. *Bathurst*, cited and remarked on by the judges in the *King* v. *Storr*, the court laid considerable stress on the circumstance of entering a *dwelling house*. We have no report of that case, but Lord *Mansfield's* observation on it (3 *Burr.* 1701) is, that it does not seem to him to lay down any such rule, as that *force and arms* alone implies such force as will *of itself* support an indictment. " There," says he, " the fact itself naturally implied force; " it was turning and keeping the man out of his dwelling " house, and done by three people." In the case before us, there is the less reason to suppose actual force, as the entry is charged to have been made *secretly*. This might have been done through a door which was open, and yet in point of law, it was a breaking and entry with force and arms, which is the allegation in every action of trespass.

2. But supposing the indictment not to be good for a forcible entry, may it not be supported on other grounds? In the case of the *Commonwealth* v. *Teischer*, 1 *Dall.* 335, judgment was given against the defendant for " *maliciously, wilfully and wickedly killing a horse.*" These are the words of the indictment, and it seems to have been conceded by Mr. *Sergeant*, the counsel for the defendant, that if it had been laid to be done *secretly*, the indictment would have been good. Here the entering of the house is laid to be done " *secretly, maliciously, and with an attempt to disturb the* " *peace of the commonwealth.*" I do not find any precise line

by which indictments for malicious mischief are separated
from actions of trespass. But whether the malice, the mis-
chief, or the evil example is considered, the case before us
seems full as strong as *Teischer's* case. There is another
principle however, upon which it appears to me that the in-
dictment may be supported. It is not necessary that there
should be actual force or violence to constitute an indicta-
ble offence. Acts injurious to private persons, which tend to
excite violent resentment, and thus produce fighting and
disturbance of the peace of society, are themselves indicta-
ble. To send a challenge to fight a duel is indictable, because
it tends directly towards a breach of the peace. Libels fall
within the same reason. A libel even of a *deceased person* is
an offence against the public, because it may stir up the pas-
sions of the living and produce acts of revenge. Now what
could be more likely to produce violent passion and a dis-
turbance of the peace of society, than the conduct of the de-
fendant. He enters *secretly after night* into a private dwell-
ing house, with an intent to disturb the family, and after
entering makes such a noise as to terrify the mistress of the
house to such a degree as to cause a miscarriage. Was not
this enough to produce some act of desperate violence on
the part of the master or servants of the family? It is ob-
jected that the kind of noise is not described; no matter, it
is said to have been made *vehemently* and *turbulently*, and
its effects on the pregnant woman are described. In the case
of the *King* v. *Hood,* (*Sayers' Rep. in K. B.* 161) the court
refused to quash an indictment for disturbing a family by
violently knocking at the front door of the house for the
space of two hours. It is impossible to find precedents for
all offences. The malicious ingenuity of mankind is con-
stantly producing new inventions in the art of disturbing
their neighbours. To this invention must be opposed gene-
ral principles, calculated to meet and punish them. I am of
opinion that the conduct of the defendant falls within the
range of established principles, and that the judgment of
the Court below should be reversed.

YEATES J. I am perfectly satisfied that an indictment
will not lie for a mere civil injury, although some of the
precedents in *West's Symboliography* seem to wear a dif-

ferent aspect. It is much to be wished that a precise line of discrimination could be drawn between public prosecutions for misdemeanours, and actions of a civil nature; but we are bound to proceed with the best lights our books afford us on this subject. We must adhere to the mode of redress pointed out by the wisdom of the law, for every injury.

I am inclined to think, that the second count in this indictment, whereon the defendant has been convicted, may be supported as an indictment for forcible entry at common law, under the authority of *Rex* v. *Bathurst et al.* cited by the court in *Rex* v. *Storr*, 3 *Burr.* 1699. Three of the judges lay a stress upon the circumstance of its being an entry into a *dwelling house*, though Lord *Mansfield* did not seem to adopt that sentiment. Here the entry is laid to have been in a *dwelling house*, without using the words *with a strong hand*. In these two particulars the cases agree.

Be this as it may, it appears to me, that other facts are stated in this count which are proper subjects of a criminal prosecution. The jury have found by their verdict, that the defendant in the *night time*, *unlawfully*, *maliciously*, and *secretly*, with force and arms broke and entered the dwelling house of *James Strain*, *with intent to disturb the peace* of this commonwealth; and so being in the said house, *unlawfully*, *wilfully*, *vehemently*, *and turbulently* did make a great noise, *in disturbance of the peace* of this commonwealth, and greatly misbehave himself in the said dwelling house, and *Elizabeth Strain*, the wife of the said *James Strain* greatly did *frighten and alarm;* by *means* of which said fright and alarm, the said *Elizabeth*, being then and there *pregnant*, did *miscarry* within fourteen days afterwards, and other wrongs to her then and there did to her great damage, to the evil example of all others in like cases offending, and against the peace, &c.

The several circumstances of *time, manner, temper of mind, the deliberate act, breach of the peace,* and the *injurious consequences* attendant thereon, form strong characteristical features of a public offence punishable by the criminal law. The intention to disturb the peace and the actual disturbance thereof, to the evil example of others, are expressly charged and found. At the same time I admit that the charge of misbehaviour in the house generally is too vague,

without laying particular facts; yet the indictment will not be vitiated thereby, if other matters of a criminal nature are correctly and precisely charged therein. Human prudence cannot guard against such outrageous and unlawful acts as are here stated. Making a noise in the street with a speaking trumpet in the night time, 1 *Stra.* 704, does not exhibit so strong a case as the present. So the knocking violently at the outer door of a dwelling house. *Rex* v. *Hood, Say.* 161. The same observation applies with much force to *Respublica* v. *Teischer*, 1 *Dall.* 338, wherein an indictment for maliciously, wilfully and wickedly killing a horse, was adjudged to be good; and also to the cases cited in the opinion of the Chief Justice, of the poisoning of chickens, cheating with false dice, tearing a promisory note, &c. All those instances partook more of the nature of private injuries than the present, which as established by the verdict, appears to have been wanton malicious mischief, practised in the night time, upon a defenceless pregnant woman, endangering her life, and as an evil evample to others highly detrimental to society. For these reasons I am of opinion, that the judgment of the Court of Quarter Sessions, on the reasons filed in arrest of judgment of the indictment, be reversed, and that the record be remitted to the Sessions to render judgment thereon for the commonwealth.

BRACKENRIDGE J. It cannot be inferred, *vi termini*, that the word *break*, means more than a *clausum fregit*, or a breaking of the close in contemplation of law, even though a dwelling house was the close broken; because the trespass might be by walking into it, *the door open*. But the court might refuse to quash, because it might appear *on the evidence*, that the *breaking* amounted to more than a *clausum fregit* in trespass. But taking the entry to amount to nothing more than a walking in, the door open, may not the motive of his entry, and the use he made of it, constitute a misdemeanour? What is he alleged to have done, after entering the house? " Wilfully, vehemently, and turbulently did make a great noise." How is a noise occasioned that is perceptible to the ear? It must be by an impulse of the air on the organs of hearing. And what is it, whether it is by the

medium of *air*, or water or earth, that an *assault and bat-tery is committed?* The impulse of the air may give a great shock. Birds have fallen from the atmosphere struck by a mighty voice. This happened at the celebration of the *Isth-mian* games, as related by *Plutarch* in his life of *Paulus Emilius.* Are we bound to consider the noise gentle? Are we not at liberty to infer the mightiest effort of the human lungs? But the power of imagination increases the effect. Armies have been put to rout by a shout. The king of *Prussia* in the seven years' war, won a battle by the sound of artillery without ball. Individuals have been thrown into convulsions by a sudden fright from a shout. The infant in the womb of a pregnant woman has been impressed with a physical effect upon the body, and even *upon the mind*, by a fright. *Mary* queen of *Scots*, from the assassination of *Rizzio*, communicated to her offspring the impression of fear at the sight of a drawn sword. *Peter* the Great of *Russia* had a dread of embarking on water from the same cause. Shall we wonder then that death is occasioned to the *embryo*, in the womb of a pregnant woman, by a sudden fright? If, in this indictment, it had been stated, that the woman was pregnant with a *living child*, it might have been homicide. But she is stated to have miscarried, which is the parting with a child in the course of gestation. Will not the act of the individual maliciously occasioning this, constitute a mis-demeanour? A sudden fright even by an entry without noise, presenting the appearance of a spectre, might occasion this, even though in playful frolic; yet after such effect, would not the law impute malice? No person has a right to trifle in that manner to the injury of another. But in this case why not a civil action? Because the woman might have been *alone*, and we have a right to infer that she was alone, be-cause that would be a situation most likely to accomplish the purpose, the alarming by a fright. If alone, what other testimony but that of the woman could be had to substan-tiate the injury? From the necessity of the case she must be a witness, and that could only be in the shape of a prosecu-tion by indictment. But alone or not alone, the offence laid is that of a *malicious mischief*, which is indictable, and the jury have found the outrage to have been intentional, and maliciously committed. I can have no doubt therefore, but

that it amounts to a misdemeanour, and is prosecutable by indictment. Why is it that a malicious mischief is indictable, but because it carries with it the *mala mens*, which is of the essence of a crime? The perpetrator may be regarded in some measure as *hostis humani generis*, and regardless of social duty. It requires that his conduct should be considered in a light of infamy, in a degree a malefactor, and be stigmatized as such, rather than as a mere *wrong doer* in trespass, and answerable only in damages. This is the real policy, and the principle at the bottom of the distinction.

The judgment was accordingly reversed; and the Court directed that the record should be remitted to the Quarter Sessions, that they might proceed to give judgment against the defendant.