## THE STATE vs. DANIEL BEEKMAN.

Maiming or wounding an animal, without killing it, is not an indictable offence, either at common law or under the statute law of this state.

The defendant was indicted by the grand jury of the county of Somerset, at the Court of Oyer and Terminer held in and for that county in December, 1857. The indictment was as follows :

"The grand inquest of the State of New Jersey and for the body of the county of Somerset upon their oath present, that Daniel Beekman, late of the township of Branchburgh, in the county of Somerset, on the fifth day of November, in the year of our Lord one thousand eight hundred and fifty-seven, at the township of Branchburgh aforesaid, in the county of Somerset aforesaid, and within the jurisdiction of this court, one cow, of the value of fifty dollars, of the goods and chattels of James C. Tunison, then and there being, unlawfully, willfully, and maliciously did wound, to the great damage of the said James C. Tunison, against the peace of this state, the government and dignity of the same."

At the same term of said court, the defendant was tried and found guilty, in manner and form as he stood charged in the indictment.

His counsel then moved the court in arrest of judgment, on the ground that the indictment was not sufficient in law for judgment to be rendered thereon, and that the matters and things in said indictment set forth and contained, if true, constitute no criminal offence against the laws of New Jersey. Whereupon the court suspended judgment, and ordered and directed the case to be certified to the Supreme Court, for its advisory opinion as to the sufficiency of said indictment.

The question submitted to this court was, whether the

State v. Beekman.

simple wounding of an animal, without killing the same, is an indictable offence under the laws of New Jersey.

The case was submitted on briefs, to the CHIEF JUSTICE, and Justices ELMER, POTTS, and HAINES, at February Term, 1858.

*J. N. Dills,* for the defendant.

*H. M. Gaston,* for the state.

The opinion of the court was delivered by

The CHIEF JUSTICE. The defendant was convicted, in the Somerset Oyer and Terminer, of malicious mischief. The indictment charges that the defendant unlawfully, willfully, and maliciously did wound one cow, of the value of $50, of the goods and chattels of J. C. T. The question reserved for the consideration of this court is, whether the act charged in the indictment constitutes an indictable offence in this state.

It is clearly not an offence within the statute. The act for the punishment of crimes (*Nix. Dig.* 173, § 70,) declares it to be a misdemeanor willfully, unlawfully, and maliciously to *kill or destroy* any horse, mare, or gelding, or any bull, ox, steer, bullock, cow, heifer, or calf, or any sheep or lamb. The statute extends only to the killing or destroying of certain and specified domestic animals. It does not include all domestic animals, (neither goats, pigs, or poultry being enumerated) nor does it extend to the wounding or maiming of any. If the act of wounding a cow constitute a crime, it must be an offence at common law. Is it so?

The general rule is that no injuries of a private nature, unless they some way concern the king or affect the public, are indictable at common law. *Hawk.* 210, *b.* 2, *ch.* 25, § 4; *Rex* v. *Storr,* 3 *Burr.* 1698; *Rex* v. *Atkins,* 3 *Burr.* 1706; *Rex* v. *Wheatly,* 2 *Burr.* 1125; *Bac. Ab.,* "*Indict*

State v. Beekman.

ment," E; Com. Dig., "Indictment," E; The State v. Burroughs, 2 Halst. 426.

Blackstone regards the crime of malicious mischief as purely a statutory offence. "Malicious mischief, or damage, is the next species of injury to private property which the law considers as a public crime. This is such as is done, not animo furandi or with an intent of gaining by another's loss, which is some, though a weak excuse, but either out of a spirit of wanton cruelty or black and diabolical revenge, in which it bears a near relation to the crime of arson; for as that affects the habitation, so this does the other property of individuals. And therefore any damage arising from this mischievous disposition, though only a trespass at common law, is now, by a multitude of statutes, made penal in the highest degree." 4 Bla. Com. 244.

Among those offences made penal by statute, though only trespasses at common law, he enumerates the destroying of sea or river banks, the burning or destroying of stacks or ricks of hay or grain, and the killing of horses, sheep, or cattle, the very offences specified in our statute against malicious mischief.

The distinction, remarks Mr. Christian, between public crimes and private injuries seems entirely to be created by positive laws, and is referable only to civil institutions. * * * * To destroy another's property willfully, without making the owner a compensation, is, in all cases, a worse crime in reason than theft; because the individual deprived of his property suffers precisely the same injury, and the public loses the benefit of that property, which contributes to the support of no one; and he who does the injury has not the temptation of him who steals to supply his wants. In the case of those actions which are only civil injuries, and to which no legal punishment is annexed, the law has supposed that retribution will be sufficient to deter from the commission of them. But the willful and malicious destruction of another's property

by fire, in many cases is punished with death : so, also, is the malicious killing and maiming of another's cattle ; yet *these detestable and diabolical acts were not crimes by the common law of England ;* but experience discovered the necessity of rendering them subject to public and severe punishment. Yet to set fire to a field of standing corn is still only a private injury, though this is an act which strikes at the very being of society ; but the legislature have not yet found it necessary to repress it by the terror of penal laws.    4 *Bla. Com.* 5.

In Ranger's case, 2 *East's P. C., ch.* 22, § 16, it was held that no indictment lies at common law for unlawfully, with force and arms, maiming a horse, and that the fact itself was only a trespass independent of the statute, cited 2 *Russ on Crimes* 497, *ch.* 43.    It was so held, also, as late as 1840, in *Regina* v. *Wallace,* 1 *Crawford and Dix Cir. Cases* 403.    A strong confirmation of this position is found in the fact that among the very numerous cases in the English books of indictments for maiming, wounding, and killing cattle, not a single conviction or precedent of an indictment can be found for the offence at common law, independent of the statute.    *Hawk. P. C., b.* 1, *ch.* 46 ; 3 *Chitty's Cr. Law* 1087 ; *Arch. Cr. Pl.* 182 ; *Crown Cir. Comp.* 190.

It has been ingeniously suggested that this absence of precedent and authority may be accounted for on the theory, that the statute was intended as a mere increase of the penalties of the crime at common law.    And that the statutes were so ancient, so numerous, and the penalties so specific, certain, and severe, that the statutes were resorted to, and the common law lost sight of.    *State* v. *Briggs,* 1 *Aiken* 226 ; *Loomis* v. *Edgerton,* 19 *Wend.* 419 ; *Wharton's Am. Cr. Law,* § 2002.

This explanation can scarcely be regarded as satisfactory.    It is hardly conceivable that an offence at the common law so common as the killing, wounding, and maiming, and so serious as even to demand a multitude of stat-

State v. Beekman.

utes for its suppression, should not have been so much as mentioned by Coke, or Hale, or Hawkins. That its existence should have been denied by Blackstone and by Christian, and that the Court of Queen's Bench, so late as the close of the last century, (2 *East's P. C.*, ch. 22, § 16,) should have held it to be not an offence at common law. Nor does it seem at all consistent with probability, that in the numerous reported cases when the offender has escaped punishment on the ground that the offence charged was not within the terms of the statute, that resort should not have been had to the common law to enforce punishment, if in fact the common law offence existed.

Nor is it at all reconcilable with this theory that the statute of 22 and 23 *Car. II.*, which makes the killing of cattle in the night time a felony, subjects the persons guilty of wounding cattle in the night time to triple damages, only, in a civil action at the suit of the party grieved. 3 *Stat. at Large* 354, §§ 1, 5.

In *Wharton's Cr. Law.* (ed. 1857), § 2002, it is said that malicious mischief in this country, as a common law offence, has received a far more extended interpretation than has been attached to it in England, and the learned author has defined the common law' offence of malicious mischief, as received in this country, to be "any malicious or mischievous injury either to the rights of another or to those of the public in general." This, probably, is law within the commonwealth of Pennsylvania, where the crime of malicious mischief has received a very wide interpretation. But the proposition that any malicious or mischievous injury to the rights of an individual is an indictable offence at the common law, is unwarranted either by principle or by authority. It would render every willful trespass an indictable offence.

In *Respublica* v. *Teischer*, 1 *Dall.* 335, it was held, by the Supreme Court of Pennsylvania, that an indictment would lie at the common law for maliciously, willfully,

and wickedly killing a horse. The attorney-general, in that case, admitted that he had not been able to discover any instance of an indictment at common law for killing an animal, or, indeed, for any other species of malicious mischief; that in all the precedents, as well ancient as modern, he had found the charge laid *contra formam statuti*, except in the case of an information for killing a dog, (cited from 12 *Mod.* 337) upon which, however, he declared he did not mean to rely. The court, however, appear to have relied upon it, and no other authority is cited in support of the decision. It is remarkable that the case cited is not to be found. Neither the authority itself nor the reason assigned commends the case to our favorable regard. This case is approved in the *Commonwealth* v. *Taylor*, 5 *Binn.* 277, and appears to be the settled law of that commonwealth.

In *The People* v. *Smith*, 5 *Cowen* 258, it was held that an indictment lies for maliciously, wickedly and willfully killing a cow, the property of another. The indictment was manifestly framed upon the authority of *Respublica* v. *Teischer*, 1 *Dall.* 335, and is supported mainly by the authority of that case. The case is sustained on the broad principle that malicious mischief to private property without the hope or expectation of gain is indictable at common law as a misdemeanor. The same principle is approved and adopted in *Loomis* v. *Edgerton*, 19 *Wend.* 419. In *Kilpatrick* v. *The People*, 5 *Denio* 277, which was an indictment for unlawfully, willfully and maliciously destroying the windows of a dwelling-house, it was held, upon a review of all the cases, that a mere act of trespass does not become indictable if committed maliciously and without claim of right or motive of gain. The case is distinguished, it is true, from the preceding cases, upon the ground that the act was not charged to have been committed *secretly*, and that it lacked the ingredient of *cruelty*. But the broad principle upon which the previous cases were decided was utterly repudiated. I know of no prin-

ciple, says Justice Beardsley, in delivering the unanimous opinion of the court, on which the act described in this indictment can be held to be a public crime. A great outrage it certainly was, and therefore very fit to be considered by the legislature. But the common law regards it as nothing more than an aggravated trespass.

In *The State* v. *Briggs*, 1 *Aik. R.* 226, the Supreme Court of Vermont sustained an indictment for maiming and destroying colts, in direct conflict with the authority of *Ranger's case*, 2 *East's P. C.* 1074. *Wanton cruelty to the beast* is declared to be the gravamen of the offence. Upon this principle the defendant would be equally criminal for killing his own beast. But the gravamen of the crime of malicious mischief is *malice* toward the owner of the beast, and if it appear that the beast was killed from other motive the indictment fails. *Rex* v. *Dobbs*, 2 *East's P. C.* 513; 3 *Chitty's C. L.* 1086, *note a.* In a more recent case in the state of Vermont, it was adjudged that an indictment could not be sustained for feloniously, maliciously, mischievously and wickedly killing a beast, the property of another, thus overruling the prior case of The State *v.* Briggs. *State* v. *Wheeler*, 3 *Vermont R.* 344.

The adjudications in the American courts upon this subject have not been uniform. It is certainly true that, in several of the states, malicious mischief, as a common law offence, has received a far more extended interpretation than has been attached to it in England. A collection and discriminating review of the authorities will be found in 7 *Law Reporter, N. S.*, 88.

But no such extended construction of the common law has been adopted in this state. The only reported case upon the subject of malicious mischief recognizes and adopts the rule of the ancient common law. *State* v. *Burroughs*, 2 *Halst.* 426.

The 61st section of our statute of 1796, (*Paterson* 219) which is substantially the same with the 70th section of the present act, (*Nix. Dig.* 174) makes the malicious kill-

ing or destroying of certain cattle a misdemeanor, whether committed by night or by day, but does not extend to the wounding of cattle, nor to all cattle, as both the English statutes of 22 and 23 *Car. II.* and *of* 9 *Geo. I.*, do. It is worthy of notice that the manuscript draft of this clause of the act by Paterson embraces the provisions of the 1st and 5th sections of the statute of Charles II., making both the killing and the wounding of cattle a misdemeanor. Its language is, if any person shall willfully, unlawfully and maliciously kill or destroy, maim, wound or hurt any horse, &c. The words " maim, wound, or hurt " were stricken out before its final enactment, thus making it indictable only to kill or destroy, not to maim, wound or hurt an animal, and affording the strongest evidence that the omission was the result of design, not of inadvertence. And this fact is the more significant when it is remembered that the penalty imposed by the statute for killing an animal was restricted within narrower limits than that authorized to be inflicted for common law offenses; thus virtually making the wounding of an animal, if it be a crime at common law, a higher offence than the killing of an animal, a result which never could have been designed.

The facts charged in this indictment constitute no indictable offence, and the Court of Over and Terminer should be advised accordingly.