836 A.2d 871

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Richard Joseph COSNEK, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 2003.

Decided Nov. 24, 2003.

William Patrick Weichler, Erie, for Richard Cosnek.

Hugh J. Burns, Philadelphia, Bradley A. Foulk, Erie, for Commonwealth of Pennsylvania.

## *OPINION*

Justice LAMB.

We granted allocatur in this case to decide whether the Commonwealth may certify an interlocutory appeal from a pretrial ruling that denied its motion in limine to exclude certain defense evidence. For the reasons that follow, we hold that it may not.

This case arose from a fatal car accident on July 5, 1997, in the City of Erie in which Joseph Trigilio was killed. Mark Dylewski was pursuing Richard Cosnek in a high-speed car chase that ended when Cosnek failed to stop at a stop sign and collided with Trigilio's vehicle. Cosnek was charged on November 21, 1997 with several offenses including involuntary manslaughter and vehicular homicide.

Prior to trial, a defense motion to suppress blood-alcohol test results was granted; but, a defense motion to permit expert testimony on "fight or flight" syndrome was denied. The Commonwealth unsuccessfully appealed the suppression of the blood-alcohol test results to the Superior Court, which held on December 2, 1998 that the inevitable discovery rule could not cure a facially invalid warrant.

The case was again scheduled for trial, prior to which the Commonwealth filed a motion in limine to preclude a defense expert in accident reconstruction from testifying that the accident was caused by the chase, not by Cosnek disregarding his duty to stop. After a *Frye*[1] hearing, the trial court denied the Commonwealth's motion to preclude the testimony, finding that causation was within the scope of an accident reconstruc-

1. In *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923), the court held that "[t]he thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." The *Frye* standard was adopted by this Court in *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277, 1281 (1977), and is currently under review in *Grady v. Frito–Lay, Inc.,* No. 43 Western Appeal Docket 2002 (Argued March 4, 2003).

tionist's expertise. The Commonwealth appealed, certifying that the admission of the evidence terminated, or substantially handicapped, the prosecution of the case. The Superior Court reversed on June 20, 2000 in a memorandum opinion, relying on its own recent opinions to find that the appeal was properly before it and that the expert testimony would impermissibly bolster witness credibility. The court erred when it relied on its opinions in *Commonwealth v. Pitts*, 740 A.2d 726 (Pa.Super.1999), and *Commonwealth v. Allburn*, 721 A.2d 363 (Pa.Super.1998), *alloc. denied*, 559 Pa. 662, 739 A.2d 163 (1999), to find that the Commonwealth may certify an appeal of a pretrial order admitting defense evidence.

Certification of pretrial appeals by the Commonwealth is an exception to the requirement that appeals may be taken only from final orders. The exception is memorialized as Pa.R.A.P. 311(d), which provides that:

> In a criminal case, under circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d).

The plain language of Rule 311(d) limits its application to "circumstances provided by law"; therefore, we examine the legal underpinnings of the Rule for its proper application.

Early in the 19th Century, this Court occasionally entertained, without question, Commonwealth appeals from final orders in criminal cases. *See Commonwealth. v. Taylor*, 5 Bin. 277 (Pa.1812) (hearing appeal of a dismissal of a burglary charge after verdict of guilt); Commonwealth v. McKisson, 8 Serg. & Rawle 420 (Pa.1822) (appeal from the dismissal of indictment for fraud for selling a heifer with a broken leg).

However, more recent jurisprudence holds that the Fifth Amendment[2] to the United States Constitution prohibi-

2. Double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit repeated prosecu-

tion against double jeopardy places constitutional limits on government appeals in criminal cases; therefore, the government may appeal only pursuant to express statutory authority. *Arizona v. Manypenny*, 451 U.S. 232, 245, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981). The United States Supreme Court has held that it is fundamental that "the United States has no right of appeal in a criminal case absent explicit statutory authority." *United States v. Scott*, 437 U.S. 82, 84–85, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). "[A]ppeals by the Government in criminal cases are something unusual, exceptional, not favored." *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957).

The federal equivalent of Rule 311(d) is 18 U.S.C. § 3731, which provides in relevant part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court **suppressing or excluding evidence** or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

18 U.S.C. § 3731 (emphasis added).

The courts have strictly construed Section 3731. *U.S. v. McVeigh*, 106 F.3d 325, 330 (10th Cir.1997) (collecting cases) (refusing a government appeal of a sequestration order).

Before the enactment of Section 3731, the United States Supreme Court was unmoved by the argument that in some instances the government might never be able to appeal an adverse ruling, reasoning that:

Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable. In particular is this true of the Government

tions for the same offense. *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7, 8 (1992).

in a criminal case, for there is no authority today for interlocutory appeals, and even if the Government had a general right to review upon an adverse conclusion of a case after trial, much of what it might complain of would have been swallowed up in the sanctity of the jury's verdict. *Carroll v. U.S.*, 354 U.S. at 406, 77 S.Ct. 1332.

The language of the Pennsylvania Rule 311(d) is derived from *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), in which this Court established the parameters for handling cases after the United States Supreme Court held in *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." In *Bosurgi*, the trial court held that the only evidence against the defendant was illegally seized, which, after *Mapp*, compelled its exclusion from trial.

This Court found that a pretrial suppression order which terminates or handicaps the prosecution has "such an attribute of finality as to justify the grant of the right of appeal to the Commonwealth." *Bosurgi*, 190 A.2d at 308. In *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985), this Court held that when the Commonwealth certifies that a suppression order substantially handicaps or terminates a prosecution that certification "in and of itself, precipitates and authorizes the appeal." On May 6, 1992, effective July 6, 1992, Pa.R.A.P. 311 was amended to permit an interlocutory appeal as a matter of right by the Commonwealth in instances where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d).

The roots of the Rule are planted in the fundament of constitutional law: the Commonwealth has a never shifting burden to prove each element of the crime charged beyond a reasonable doubt. Constitutional due process requires that the government prove every fact necessary to constitute the crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The burden of proof never shifts but rests with the prosecution throughout.

*Turner v. Commonwealth,* 86 Pa. 54, 74 (1878). It is the continuing presumption of innocence that is the basis for the requirement that the state has a never-shifting burden to prove guilt of each essential element of the charge beyond a reasonable doubt. *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441, 445 (1959).

■ When a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case. *Dugger,* 486 A.2d at 386. Additionally, only the prosecutor can judge whether he can meet his constitutional burden of proving his case without that evidence. *Id.*

*Bosurgi* and Rule 311(d) were read to include motions in limine by *Commonwealth v. Gordon,* 543 Pa. 513, 673 A.2d 866 (1996). In a subsequent case, *Commonwealth v. Matis,* 551 Pa. 220, 710 A.2d 12, 18 (1998), this Court held that "[a]n order denying a motion for a continuance to secure the presence of a necessary witness has the same practical effect of an order suppressing or excluding evidence" and also allowed the Commonwealth's interlocutory appeal.

■ In this case, the Superior Court's error in relying on *Commonwealth v. Pitts* and *Commonwealth v. Allburn* is the result of a misreading of *Gordon* and *Matis.*

In *Pitts,* the Commonwealth appealed two pretrial rulings, one that suppressed a statement made by the defendant and a second that denied a Commonwealth motion to preclude psychiatric evidence of post-traumatic stress syndrome to support a claim of self-defense. *Pitts,* 740 A.2d at 732. The panel in *Pitts* held that both questions were properly before it. The first question, a straight-forward suppression motion, was clearly appropriate under a Rule 311(d) certification.

The second question in *Pitts,* however, raised the same question which is raised here: whether the Commonwealth may appeal the denial of a motion excluding defense evidence. To answer that question, the *Pitts* court relied on *Allburn,* to its detriment. The *Pitts* panel held that *Allburn* stood for the

proposition that "when the Commonwealth appeals an interlocutory order that allows evidence proffered by the defense, the good faith certification without more, is sufficient to mandate review." *Pitts*, 740 A.2d at 732.

The difficulty is that *Allburn* does not stand for that proposition because, in *Allburn*, the trial court certified the appeal of the question of whether a minor's past sexual conduct could be introduced in a defense to several sex charges including corruption of minors and endangering the welfare of children. In language taken straight from the statute allowing trial courts to certify interlocutory appeals, 42 Pa.C.S. § 702(b), the trial court found that "this case involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an intermediate appeal may advance the ultimate termination of the matter." *Allburn*, 721 A.2d at 365. The Superior Court in *Allburn* impliedly granted the permission to appeal required by Section 702(b) when it considered the case. In addition to the trial court certification of the interlocutory appeal, the "appellees did not dispute the appealability of the order." *Allburn*, 721 A.2d at 365. The panel *sua sponte*, but unnecessarily, addressed the question of appealability and found that even though the Commonwealth was "appealing an order allowing evidence proffered by the defense ... The Commonwealth does not have to prove it will be substantially handicapped." *Allburn*, 721 A.2d at 365. The decision relies on the language in *Gordon* that there is no substantive difference between suppression rulings and motions in limine "to admit or exclude evidence. In both cases, a pretrial order is being handed down which admits or excludes evidence at trial, and in both cases, once a jury is sworn the Commonwealth may not appeal from an adverse ruling." *Allburn*, 721 A.2d at 365–66 (quoting *Gordon*, 673 A.2d at 868).

In *Gordon*, however, the question was whether the Commonwealth could certify an appeal of a defense motion in limine to exclude evidence of other bad acts which the Commonwealth wanted to offer as evidence of a common scheme, plan or design. *Gordon*, 673 A.2d at 868. This Court answered the question in *Gordon* by holding that motions in

limine are the same as suppression motions for the purposes of Rule 311(d) appeals. The question in *Gordon* did not involve proffered defense evidence.

Thus, the line of cases on which the Superior Court relied in this case is without foundation in our decisional law: *Pitts* cites *Allburn* which cites *Gordon.* In neither *Gordon* nor *Allburn* was the question raised or decided.[3]

The question on which this Court granted allocatur, does Rule 311(d) allow the Commonwealth to certify an appeal from a ruling admitting defense evidence, is, therefore, squarely before this Court for the first time. For the reasons that follow, we hold that the Commonwealth's right to interlocutory appeals does not extend to appealing the admission of defense evidence.

The United States Supreme Court has held that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

This Court has consistently held that an accused has a fundamental right to present evidence so long as the evidence is relevant and not excluded by an established evidentiary rule. *Commonwealth v. McGowan,* 535 Pa. 292, 635 A.2d 113, 115 (1993); *see also Commonwealth v. Ward,* 529 Pa. 506, 605 A.2d 796, 797 (1992).

■ Because an accused has the right to remain silent under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, with a few rule-based exceptions such as alibi or insanity[4], the

**3.** After we granted allocatur in this case, the Superior Court decided two cases *en banc, Commonwealth v. Jones,* 826 A.2d 900 (Pa.Super.2003), and *Commonwealth v. Shearer,* 828 A.2d 383 (Pa.Super.2003), in which it continued to rely on the reasoning in *Pitts,* which we reject here.

**4.** Pa.R.Crim.P. 573(C)(a) and (b).

defense is under no requirement to disclose its tactics, its theory of the case, its experts or its witnesses before the start of trial. *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980, 990 (1984) (Nix, J., dissenting).

Were this Court to allow the Commonwealth to appeal rulings admitting defense evidence as of right, the accused would be forced to balance his right to a trial without delay with his fundamental right to present evidence. The chilling effect of such a choice would give the Commonwealth an unwarranted and unfettered influence over the defense case, a practice specifically disapproved in *Lewis v. Court of Common Pleas of Lebanon County,* 436 Pa. 296, 260 A.2d 184, 188 (1969) (holding that a prosecutor could not discourage a witness from talking with the defense attorney).

An even more likely outcome would be a reluctance, if not a refusal, of the defense to engage in the mutual pretrial discovery 1 which is fostered by Pa.R.Crim.P. 573. *In the Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126, 130 (1981) (noting the benefits of liberal discovery rules) (superseded by statute); *see also Dennis v. United States,* 384 U.S. 855, 870, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (reasoning that "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice."). Without the ongoing and mutual discovery fostered by the Rule, the wheels of justice might well slow to a halt.

Pre-trial appeal is not the Commonwealth's only recourse. Tactics and theories often change rapidly during trial; today's expert report may become tomorrow's scrap paper. A well-timed objection during trial often persuades a trial judge that foundation is lacking, testimony irrelevant or evidence is cumulative.

Contrary to the suggestion in the dissenting opinions, the Commonwealth is not without the ability to seek review of a pre-trial ruling in favor of a defendant. Like any litigant, the Commonwealth may proceed with an interlocutory appeal by permission pursuant to Appellate Rule 1311 by requesting that

the trial court certify the order in accordance with Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), specifically, that the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter[.]" *Id.* Even when a trial court refuses to certify a pre-trial order, the Commonwealth may nevertheless seek review of the refusal. *See* Pa.R.A.P. 1311 Note (explaining that where a lower court refuses to include the required language under Section 702(b), a petition for review pursuant to Chapter 15 of the Appellate Rules is the proper procedure). Notably, the Commonwealth has successfully invoked this review process in numerous instances involving the precise concerns raised by the dissenting opinions. *See, e.g., Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d 649, 651 (2001) (addressing an interlocutory appeal by the Commonwealth of a discovery order); *Commonwealth v. Guy,* 454 Pa.Super. 582, 686 A.2d 397, 399 (1996) (reviewing an interlocutory appeal by the Commonwealth of a Rape Shield Law ruling). Moreover, the standard governing such review are similar to that proposed by Mr. Justice Castille in his concurring opinion, as there is a requirement that the issue be significant and the appellate court is vested with discretion in determining whether to allow the appeal. *See* 42 Pa.C.S. § 702(b).

The Commonwealth's ability to take an interlocutory appeal as of right from the suppression or exclusion of its own evidence is rooted in the particular burden which it bears to prove its case. The defense, in contrast, carries a particular privilege to retain control over its own evidence. Both interests are protected when we limit the application of Rule 311(d) to those "circumstances provided by law" in which a pretrial ruling results in the suppression, preclusion or exclusion of Commonwealth evidence.

For all the foregoing reasons, the Order of the Superior Court is reversed and the matter remanded to the trial court.

Justice CASTILLE files a concurring opinion.

Justice NEWMAN files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Justice CASTILLE concurring.

I concur in the result.

U.S. Supreme Court Justice Benjamin N. Cardozo, addressing the propriety of affording the state in a criminal trial with a right similar to that afforded the defendant, that is to secure a trial free from substantial legal error, observed:

> What the answer would have to be if the state were permitted after a trial free from error to try the accused over again or to bring another case against him, we have no occasion to consider.... The state is not attempting to wear the accused out by a multitude of cases with accumulated trials. It asks no more than this, that the case against him shall go on until there shall be a trial free from the corrosion of substantial legal error.... This is not cruelty at all, nor even vexation in any immoderate degree. If the trial had been infected with error adverse to the accused, there might have been review at his instance, and as often as necessary to purge the vicious taint. A reciprocal privilege, subject at all times to the discretion of the presiding judge ... has now been granted to the state. There is here no seismic innovation. The edifice of justice stands, its symmetry, to many, greater than before.

*Palko v. Connecticut,* 302 U.S. 319, 328, 58 S.Ct. 149, 153, 82 L.Ed. 288 (1937) (citations omitted), *overruled, Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *see also Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304, 308 (1963) ("In our zeal to protect and preserve for the accused every constitutional right to which he is entitled we too often forget and neglect to preserve the rights of society which, too, are entitled to consideration."). The underlying jurisprudential issue raised in this case is whether, where a post-acquittal appeal by the Commonwealth is prohibited by the constraints of double jeopardy—no matter how corroded by substantial error, to the detriment of the Commonwealth,

the trial may have been—the Commonwealth should be afforded some degree of "symmetrical privilege" to seek to ensure, through the only timely appellate review available to it, that it and the people whom the prosecution represents receive a fair trial.

Under Pa.R.A.P. 311 and our decisional law, it is now settled that where it is Commonwealth evidence that has been excluded by pretrial order, an appeal will lie as of right, conditioned upon certification of the prosecutor as an officer of the Court that the exclusionary ruling effectively terminates or substantially handicaps the prosecution. The present appeal raises a more difficult question: should the Commonwealth ever be permitted to appeal as of right from a pretrial decision which would admit **defense evidence,** evidence which the Commonwealth believes is both inadmissible and will compromise society's symmetrical right to a fair trial in a criminal matter? I agree with the Majority that a ruling admitting defense evidence differs in kind from a ruling which has the effect of diminishing or eliminating the Commonwealth's case-in-chief. But, it seems to be indisputable that certain erroneous rulings on defense evidence can also be devastating to the Commonwealth's right to a fair trial. Mr. Justice Eakin's Dissenting Opinion cogently suggests some not-implausible scenarios where that result just might obtain: *i.e.,* erroneous Rape Shield Act rulings or rulings permitting expert testimony on witness credibility. Permitting a pretrial Commonwealth appeal in such instances does not augur the prospect of the Commonwealth wearing the accused down through repeated trials or vexatious pretrial tactics; rather, it merely provides a limited symmetrical means to vindicate the Commonwealth's right to a fair trial which, in turn, inures to the benefit of society as a whole. Trials are supposed to be fair inquiries into the truth based upon the prevailing law of the land: their results should not be pre-destined by arbitrarily-insulated and erroneous legal rulings.

The difficulty in the majority and dissenting postures is that each stakes out what amounts to an absolutist position on the question of the Commonwealth's right to review. Thus, the

Majority deems Rule 311(d) totally inapplicable, and would never permit the Commonwealth to appeal as of right in an instance involving admission of defense evidence. The Dissents, on the other hand, would always permit such appeals, so long as the Commonwealth provided a Rule 311(d) certification that the ruling on the defense evidence substantially handicapped the prosecution. As a matter of Rule 311 interpretation, there is rational support for each position. The Majority understandably cites the "under circumstances provided by law" qualifier, viewing this decision itself as that controlling circumstance, and also stresses the fact that *Bosurgi* and its progeny involve the suppression/exclusion of evidence paradigm. The Dissents, meanwhile, note that the actual language of Rule 311(d) is not restricted to situations involving suppression or exclusion of Commonwealth evidence and also cite to the importance, squarely acknowledged in the *Bosurgi* line of cases, of the fact that the Commonwealth, unlike the defendant, has no post-trial right of review.

These diametric positions are a reflection of the absolute language contained in Rule 311 itself: *i.e.*, if the Rule applies, the Commonwealth's certification alone is sufficient to perfect the Commonwealth's right to appeal. *See, e.g., Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985). But, the underlying assumption shared by the Majority and Dissents—that Rule 311 provides the only potential basis for a Commonwealth appeal as of right in this instance—may itself be unnecessary. The better approach would be to view this case in the manner in which the *Bosurgi* Court approached the issue of appellate jurisprudence presented to it: as a novel question requiring a fresh view that reasonably accommodates both the accused's right to a speedy trial and the Commonwealth's right to a fair one. The defense evidence posture of this case implicates concerns which, though related, are nevertheless distinct from the suppression/exclusion paradigm that led to the *Bosurgi* rule and, eventually, to Rule 311. The actual language devised in *Bosurgi* and imported into Rule 311—referencing effective termination and substantial handi-

cap—is obviously in response to the circumstance of an exclusion of Commonwealth evidence.

But, as the Dissents properly recognize, the exclusion of Commonwealth evidence is not the only manner by which the Commonwealth may be denied a fair trial. When it is defense evidence that is at issue, "substantial handicap" to the Commonwealth is not so much implicated as the prospect that the Commonwealth will be unable to receive a fundamentally fair trial. There can be certain defense evidence whose impact may be devastating to the Commonwealth's prospects of a just trial; indeed, that is precisely why our Rules **require** pre-trial disclosure of certain defenses and witnesses, thereby permitting the Commonwealth a fair opportunity to prepare. Pa. R.Crim.P. 573(C); *see also Commonwealth v. Sartin,* 561 Pa. 522, 751 A.2d 1140, 1146 (2000) (adverting to "the now discredited days of trial by ambush and surprise rather than the modern theory of open discovery and pre-trial announcement of defenses").[1]

It is not an unusual circumstance for this Court to establish through decisional law an appropriate avenue of appealability in the absence of a governing or officially promulgated procedural rule. *E.g. Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721, 730, n. 8 (2001) (noting that existing appellate rules did not provide for appeal of trial court order staying execution where trial court denied substantive relief and there was no pending appeal, and referring matter to Appellate Procedural Rules Committee to devise such a Rule); *Commonwealth v. Brady,* 510 Pa. 336, 508 A.2d 286, 291 (1986) (fashioning rule to govern pretrial appeals by accused on double jeopardy

---

1. The Majority's suggestion that a recognition of any Commonwealth right to appeal in this instance would "likely" lead to a defense "reluctance" or "refusal" to disclose evidence required to be disclosed by Rule 573, Majority op. at 876, suggests a right or power of the defense which that Rule does not remotely contemplate. Disclosure of certain defense evidence under the Rule is mandatory; any defense "reluctance" or "refusal" properly risks sanction, including outright exclusion of the evidence. I do not share the Majority's view that the defense bar is "likely" to engage in unethical conduct in violation of the Rule; and, even if I did, I do not agree that the prospect of unethical defense conduct is relevant to the Commonwealth's right to a fair trial.

grounds; holding that such appeals are permissible unless trial court makes written finding that motion is frivolous). Certainly, the *Bosurgi* Court did not permit the absence of a then-existing appellate Rule to prevent it from fashioning one that was appropriate for the circumstances. In similar fashion, I would candidly recognize that Rule 311 was not intended to address the situation *sub judice* and I would proceed to analyze the issue with a fresh eye which accounts for the distinct concerns presented here.

Ultimately, I believe that the better rule in this situation is one which would recognize the Commonwealth's right to appeal certain pre-trial decisions involving defense evidence, but which would require something different and greater than a Commonwealth certification of substantial handicap. The Rule should be aimed at addressing circumstances where there is a substantial showing that the pretrial ruling would likely implicate the Commonwealth's right to a fundamentally fair trial. The procedural mechanism to accomplish such a screening of Commonwealth appeals could proceed as a preliminary determination by the appellate court that the issue presents a substantial question affecting the ability of the Commonwealth to obtain a fair trial; or by a trial court certification that the Commonwealth's claim that the ruling substantially affected its ability to receive a fair trial is not frivolous. *See Brady*, 508 A.2d at 291. I offer these only as examples; I would refer the matter to the Appellate and Criminal Procedural Rules Committees for their input as to the standard which would best achieve the symmetrical edifice of justice so eloquently described by Justice Cardozo nearly three-quarters of a century ago.

Turning to this appeal, I concur in the mandate today because, in the absence of a governing rule, I am left with my own independent judgment as to whether denial of the Commonwealth's right to appeal in this case presents a substantial prospect that it will be unable to receive a fair trial. I tend to agree with the Superior Court that the ruling below was an abuse of discretion as it would admit expert evidence that would invade the jury's province of determining witness credi-

bility. However, I also note that such evidence is subject to impeachment and rebuttal, which should adequately protect the Commonwealth's right to a fair trial. Moreover, quite frankly, the defense evidence on this record seems to me so implausible on its face (purporting to establish by expert opinion where appellant had focused his attention prior to colliding with the victim's vehicle) that I doubt it would be very persuasive with a jury. Accordingly, in this circumstance I do not believe that the erroneous pretrial evidentiary ruling substantially compromised the Commonwealth's ability to secure a fair trial.

Justice NEWMAN dissenting.

I respectfully dissent from the decision reached by the majority today. Pennsylvania Rule of Appellate Procedure 311(d) differs markedly from 18 U.S.C. § 3731. Our rule provides that "the Commonwealth may take an appeal **as of right** from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d) (emphasis added). The federal statute explains that "[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district court **suppressing or excluding evidence** ... if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731 (emphasis added).

Application of the federal rule is expressly limited to situations where the district court rules in favor of the defense in response to a defense-initiated motion to preclude the government's evidence. Rule 311(d) imposes no such constraint on the Commonwealth, providing instead that the Commonwealth may take an appeal from **any** adverse order that does not end the entire case, provided that the order terminates or substantially handicaps the prosecution. In fact, our jurisprudence interpreting Rule 311 indicates that we have rejected the distinction that the federal rule makes plain.

In *Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866 (1996), the Commonwealth sought to introduce transcripts of a previous trial of Gordon, and filed a motion to allow this testimony, but the trial court denied the motion. The Commonwealth certified that the order denying its motion substantially handicapped the prosecution and took an appeal to the Superior Court. The Superior Court reversed, above the dissent of one judge, who would have quashed the appeal. Gordon appealed to this Court, contending that the Superior Court was without jurisdiction to consider the Commonwealth's appeal. Gordon argued, consistent with the position taken by the majority today, that allowing the Commonwealth to appeal from this adverse ruling would hinder his right to a speedy trial. We rejected this contention, concluding as follows:

> There is no essential difference between suppression rulings and rulings on motions *in limine* **to admit or exclude evidence.** In both cases, a pretrial ruling is handed down which **admits or excludes evidence** at trial, and in both cases, once a jury is sworn, the Commonwealth may not appeal from an adverse ruling.
>
> * * *
>
> Concerning speedy trial rights, while it is obvious that appeal of a pretrial order will cause a delay in the trial, the issue is not whether there is a delay, but the weight of the competing interests. Here, the competing interests are promptitude versus a considered determination of whether the Commonwealth has had a fair opportunity to put on its best case. In our view, to preclude an immediate review of a pretrial ruling that would terminate or substantially handicap the Commonwealth's case would be a harm that far outweighs the benefit to the defendant of securing a more speedy trial.

*Id.* at 868 (emphasis added). By stating that the Commonwealth can appeal "rulings on motions *in limine* to admit . . . evidence," this Court in *Gordon* anticipated the instant situation—where the Commonwealth seeks to challenge a trial

court ruling admitting evidence. We did not indicate in *Gordon* that the decision was limited to determinations adverse to the Commonwealth on motions filed by the defense.

In *Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12 (1998), we reaffirmed that "the Commonwealth's certification that a suppression order substantially handicapped the prosecution is not contestable. The certification, in and of itself, precipitates and authorizes the appeal." *Id.* at 17.. *Matis*, when combined with *Gordon*, provides that the Commonwealth, if it certifies that an adverse ruling on a suppression order or a motion *in limine* terminates or substantially handicaps the prosecution, can appeal such a ruling to the Superior Court, as of right.

This is not to say that the Commonwealth has an unfettered right to appeal any adverse pre-trial ruling. The Commonwealth must, in good faith, certify that the ruling terminates or substantially handicaps the prosecution. Where the trial court ruling allows in defense evidence, rather than excluding Commonwealth evidence, it will be exceedingly rare for the Commonwealth to make a certification that prosecution of the case is so hampered. However, I can envision a set of circumstances where the defense seeks to introduce controversial and questionably relevant evidence of a perfect defense that, if allowed, would tie the hands of the Commonwealth to such an extent that disallowing an appeal at that time would foreclose the administration of justice. Therefore, I cannot sign on to the approach taken by the majority, which holds that, as a matter of law, the Commonwealth can never appeal as of right from a trial court ruling denying a Commonwealth motion *in limine* to exclude defense evidence.[1] Accordingly, I would affirm the Opinion of the Superior Court.

1. The majority points to Rule of Appellate Procedure 1311 and Section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), to demonstrate that the Commonwealth can request certification of an interlocutory appeal from an adverse pre-trial order or, where the trial court refuses to certify, file a Petition for Review in the intermediate appellate court. However, the plain and unambiguous language of Rule 311(d) obviates the need for the Commonwealth to jump through these hoops in appropriate cases.

430

Justice EAKIN dissenting.

I respectfully dissent from the majority's sweeping new pronouncement that "the Commonwealth's right to interlocutory appeals does not extend to appealing the admission of defense evidence." Majority Opinion, at 876. As Justice Newman aptly notes, this is not what Rule 311(d) promulgated by this Court says. Unless the language of the Rule changes, it means what it says: The Commonwealth may appeal an order, not just some types of orders, if it substantially handicaps the prosecution. *See* Pa.R.A.P. 311(d).

In *Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866 (1996), this Court answered the present question when it stated:

There is no essential difference between suppression rulings and rulings on motions *in limine* to admit or exclude evidence. In both cases, a pretrial ruling is handed down which *admits or excludes* evidence at trial, and in both cases, once a jury is sworn, the Commonwealth may not appeal from an adverse ruling. That suppression motions are always of constitutional dimension and motions *in limine* are only sometimes of constitutional dimension is of no import, for in both cases, without an immediate right of review, the Commonwealth's case may be so hampered that the Commonwealth may be unable to proceed.

*Id.*, at 868 (emphasis added). This reaffirmed the Commonwealth's right to appeal rulings regarding the exclusion *and* admission of evidence; as the Commonwealth is not going to appeal a decision admitting its own evidence, this *must* refer to admission of defense evidence.

The majority's proclamation today eliminates the Commonwealth's ability to obtain appellate review of admissibility questions that are fundamental to a trial. This implicates "a question of elemental fairness; providing the Commonwealth with what might be their only appeal." *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382, 386 (1985). If the Commonwealth's motion *in limine* is denied and the accused is acquitted, double jeopardy precludes review of the ruling. If

the accused is convicted, the Commonwealth is also precluded from appealing because it is not an aggrieved party.

When the victim of a sexual assault, for example a child victim, is asked to testify in court about the intimate personally invasive details of the crime, the embarrassment is not inconsiderable. If the trial court incorrectly orders that evidence precluded by the Rape Shield Act may be admitted by the defense, the mortification cast on the victim is multiplied. Such a ruling will cause many victims to decline to testify; they understandably choose not to be put on trial themselves, revictimized by allegations of and about past behavior that is irrelevant and statutorily prohibited. Does this not hamper the case in the most significant way possible?

If the Commonwealth cannot appeal such a ruling pretrial, where is the justice? When may improper rulings under the Rape Shield Law *ever* be reviewed? The same can be said of pretrial rulings allowing dubious expert testimony on all manner of things, some vouching for matters as inappropriate as the intent or credibility of the witnesses or the accused. Without providing an immediate right of appeal, decisions allowing such evidence or interpreting this aspect of the Rape Shield Law will escape review. *See also Commonwealth v. Jones,* 826 A.2d 900 (Pa.Super.2003) *(en banc)* (Commonwealth permitted to appeal denial of its motion *in limine* to exclude victim's prior sexual history). The defense may appeal any and all evidentiary rulings, those that admit prosecution evidence, and those that deny defense evidence, in the name of assuring a fair trial. To limit the prosecution's appeal to half the matters that assure a fair trial is inherently unfair to the victim, and to the people that the prosecution represents.

Some motions *in limine* concern evidentiary matters at best tangential to the case-in-chief; opening the appellate doors to every denied motion *in limine* would add frivolous appeals to the docket and unnecessarily delay an accused's right to a speedy trial. However, this Court requires the Commonwealth to certify the denial will terminate or substantially handicap the prosecution, *see* Pa.R.A.P. 904(e), and we must be able to rely on the certification as sufficient to safeguard

against dilatory use and abuse of the right of appeal. *See, e.g., Commonwealth v. Matis,* 551 Pa. 220, 710 A.2d 12 (1998). Until experience shows actual abuse by the elected prosecutorial representatives of our counties and our Commonwealth, something certainly not of record in any way, the Rule should be applied as written. Paranoid fears of future abuse are little more than legal hypochondria, upon which clear existing Rules and precedent should not be ignored.

Simply put, the existing Rule and precedent should be followed. I find no reason in logic or fairness to create a new shortsighted, unilaterally applicable rule. If there is a good faith certificate that a pretrial ruling substantially hampers the case of the party whose one job is to seek justice, and the only possible time to appeal is before jeopardy attaches at trial, the appeal should be allowed. Accordingly, I dissent.