J-A13009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MAURICE CORPREW | : | No. 1730 EDA 2021 |

Appeal from the Order Entered July 21, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005804-2019

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 16, 2022**

The Commonwealth of Pennsylvania appeals from the order entered on July 21, 2021, which granted the suppression motion that was filed by Maurice Corprew (hereinafter "the Defendant"). We vacate and remand.

The Defendant was arrested and charged with possession of a controlled substance with the intent to deliver ("PWID") and simple possession of a controlled substance. 35 P.S. §§ 780-113(a)(30) and (16); Commonwealth's Information, 8/19/19, at 1. Prior to trial, the Defendant moved to suppress the physical evidence against him because, he argued, the police "did not have reasonable suspicion or probable cause to stop [him or] to search . . . [his] black fanny pack," wherein the police discovered the controlled substances. *See* Suppression Hearing, 7/21/21, at 5.

During the suppression hearing, the Commonwealth presented the testimony of Philadelphia Police Officer Ancuta Gibson. Officer Gibson testified

that, at approximately 1:32 a.m. on May 5, 2019, she was on duty and driving a marked patrol car when she received a radio call "for a person with a gun as well as drug sales" occurring at a particular residence along Corral Street, in Philadelphia. *Id.* at 7-8 and 18. She testified that the subject portion of Corral Street "is a high drug and shooting and prostitution area." *Id.* at 8.

As Officer Gibson testified, she arrived at the location one minute later and observed "people exiting the house." *Id.* at 18. She then exited the patrol car and observed the Defendant leave the house with a black fanny pack in his hand. *Id.* at 8-9. She testified that she was approximately five to ten feet away from the Defendant when she first observed him and that, although it was dark outside, the area was illuminated by street lighting. *Id.* at 9.

She testified that she observed the Defendant walk "in between two parked cars. As he was approaching those cars, he leaned down and by the time he went to go lean down, I heard what sounded to be a metal object hitting the ground." *Id.* Officer Gibson testified that she observed the Defendant "place the bag down . . . in between [the] two cars" and then the Defendant "started walking the opposite way." *Id.* at 9-10 and 19.

As the officer testified, she believed that the metallic sound she heard was a gun and thus, after the Defendant began walking away, she "went [to] detain him for further investigation." *Id.* at 10. Further, she testified that, when she went to detain the Defendant, she "had another officer check the area where [the Defendant] was and that officer picked up a black bag." *Id.*

- 2 -

She testified: "[t]he officer brought the bag to me, at which point we ensured that there was no gun, and if it was a gun, that it was properly and safely secure. . . . When we opened the bag, there was immediately several packs of drugs and a little bit of cash as well." *Id.* at 10. Officer Gibson testified that she recovered "560 clear glass baggies [of] . . . heroin, as well as 197 pink capsules" of cocaine from the Defendant's bag. *Id.* at 12.

At the conclusion of the hearing, the trial court granted the Defendant's motion and ordered the suppression of all physical evidence in the case. Within the trial court's later-filed opinion, the trial court explained that it found, as a fact, that the Defendant "walked toward two parked cars, put the fanny pack down and started to walk away" – and, only after the Defendant began walking away did Officer Gibson detain the Defendant. Trial Court Opinion, 12/3/21, at 2 and 4. According to the trial court, however, there was insufficient evidence that the Defendant abandoned the fanny pack because "[t]he Commonwealth failed to elicit any testimony about how far [the Defendant] walked after placing the bag down." *Id.* at 5.

The Commonwealth filed a timely notice of appeal from the trial court's July 21, 2021 interlocutory order and, within the Commonwealth's notice of appeal, the Commonwealth properly certified that the order "terminates or substantially handicaps the prosecution." Commonwealth's Notice of Appeal,

8/18/21, at 1; *see also* Pa.R.A.P. 311(d).[1]  The Commonwealth raises one claim on appeal:

> Did the trial court err in granting [the Defendant's] motion to suppress drugs found in a fanny pack that [the Defendant] abandoned by dropping it on a public street between two parked cars and then walking away?

The Commonwealth's Brief at 4.

"We review a trial court's order suppressing evidence for an abuse of discretion and our scope of review consists of only the evidence from the defendant's witnesses [during the suppression hearing,] along with the Commonwealth's evidence that remains uncontroverted." *Commonwealth v. Miller*, 186 A.3d 448, 450 (Pa. Super. 2018) (quotation marks and citations omitted).  "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (quotation marks and citations omitted).

---

[1] "Certification of pretrial appeals by the Commonwealth [under Pennsylvania Rule of Appellate Procedure 311(d)] is an exception to the requirement that appeals may be taken only from final orders." *Commonwealth v. Cosnek*, 836 A.2d 871, 873 (Pa. 2003).  As our Supreme Court has explained, "[w]hen a pretrial motion removes evidence from the Commonwealth's case, only the prosecutor can judge whether that evidence substantially handicaps his ability to prove every essential element of his case. Additionally, only the prosecutor can judge whether he can meet his constitutional burden of proving his case without that evidence." *Id.* at 875 (citations omitted).  In following, the Supreme Court has held that the Commonwealth may utilize Rule 311(d) to immediately appeal "a pretrial ruling [that] results in the suppression, preclusion or exclusion of Commonwealth evidence." *Id.* at 877.

Relatedly, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (quotation marks and citations omitted). However, "we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (quotation marks and citations omitted).

"Under the Fourth Amendment, searches and seizures without a warrant are presumptively unreasonable, subject only to specifically established exceptions." *Commonwealth v. Wilmer*, 648 Pa. 577, 194 A.3d 564, 567-568 (2018) (quotation marks and citations omitted). "[A]n exception to the warrant requirement exists when the property seized has been abandoned." *Commonwealth v. Clark*, 746 A.2d 1128, 1133 (Pa. Super. 2000). As our Supreme Court has explained:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. . . . The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*Commonwealth v. Shoatz*, 366 A.2d 1216, 1220 (Pa. 1976) (quotation marks and citations omitted). "For a defendant accused of a possessory crime to prevail in a challenge to the search and seizure which provided the evidence

used against him, he must, as a threshold matter, establish that he has a legally cognizable expectation of privacy in the place invaded." ***Commonwealth v. Pizarro***, 723 A.2d 675, 679 (Pa. Super. 1998) (quotation marks and citations omitted). "A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished." ***Id.***

Here, the trial court found, as a fact, that the Defendant "walked toward two parked cars, put the fanny pack down and started to walk away" – and, only after the Defendant began walking away did Officer Gibson detain the Defendant. Trial Court Opinion, 12/3/21, at 2 and 4. Further, the trial court found that there was no evidence "about how far [the Defendant] walked after placing the bag down." ***Id.*** at 5. These factual findings are supported by the record and, thus, are binding on this Court.

The trial court also arrived at the legal conclusion that the above facts were insufficient to establish that the Defendant abandoned the bag. In our *de novo* review of this legal determination, we respectfully conclude that the trial court erred when it held that the facts of this case were insufficient to establish that the Defendant abandoned the bag.

Prior to the Defendant's seizure by the police: the Defendant walked out of a house at 1:30 a.m.; walked in between two cars that were parked on a public street; placed his bag on the ground, in a public street, in between two parked cars, in "a high drug and shooting and prostitution area;" and, after the Defendant placed the bag on the public street, the Defendant began

walking in the opposite direction. These facts are sufficient to establish that the Defendant "voluntarily discarded, left behind, or otherwise relinquished his interest in the [bag] so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search."[2] **See Shoatz**, 366 A.2d at 1220. To be sure, by placing the bag on the ground, in a public street – and, thus, accessible to anyone walking down the street – the Defendant's "expectation of privacy in the bag would naturally be lessened." **See Commonwealth v. Johnson**, 636 A.2d 656, 659 (Pa. Super. 1994). Further, the fact that the Defendant then began walking in the opposite direction of where he placed the bag "clearly demonstrate[s] that [the Defendant] attempted to dissociate himself from the property." **See id.** Certainly, this case is on all fours with our prior precedents wherein we

---

[2] We note that "[a]lthough abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." **Commonwealth v. Tillman**, 621 A.2d 148, 150 (Pa. Super. 1993) (quotation marks and citations omitted). In this case, the trial court arrived at the factual finding that the Defendant "walked toward two parked cars, put the fanny pack down and started to walk away" – and, only **after** the Defendant began walking away did Officer Gibson detain the Defendant. Trial Court Opinion, 12/3/21, at 2 and 4. As noted above, these factual findings are supported by the record and are binding on this Court. Further, there is no evidence that the police coerced the Defendant into abandoning the bag that contained the controlled substances. In particular, there is no evidence that, prior to the abandonment, the police approached the Defendant specifically, spoke to the Defendant, activated their lights, or acted in a coercive manner toward the Defendant. Indeed, the evidence demonstrates that the Defendant was merely one of a number of individuals who exited the house and that, when the Defendant abandoned the bag, the police were merely observing the events. **See id.** at 9-10 and 19.

determined that the facts established abandonment. ***See***, ***e.g.***, ***Commonwealth v. Byrd***, 987 A.2d 786 (Pa. Super. 2009) (holding that the defendant "abandoned the handgun when he discarded it under [an] SUV, which was parked on a public street, and then began to walk away from the scene"); ***Commonwealth v. Clark***, 746 A.2d 1128, 1134 (Pa. Super. 2000) (holding: "[the defendant's] decision to hide the seized drugs in public areas establishes that he effectively abandoned any reasonable expectation of privacy in them"); ***Commonwealth v. Johnson***, 636 A.2d 656 (Pa. Super. 1994) (holding that the defendant abandoned his bag when he "placed the bag in a tree which was in a public park . . . and, therefore, accessible to anyone frequenting the park[, and the defendant] . . . stood 10-12 feet away from the tree and approached the bag only to show potential customers what he had to sell"); ***Commonwealth v. Tillman***, 621 A.2d 148 (Pa. Super. 1993) (holding that the defendant abandoned a bag, where the police observed "the defendant drop a container to the ground . . . [and] began to walk away").

We thus vacate the trial court's order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/16/2022*