J-A06038-25                    2025 PA Super 62

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANTHONY LUCKEY | : | No. 640 EDA 2024 |

Appeal from the Order Entered February 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001585-2023

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION PER CURIAM:                                  **FILED MARCH 14, 2025**

The Commonwealth files this interlocutory appeal pursuant to Pa.R.A.P. 311(d)[1] from the inexplicable pretrial discovery order entered by the Court of Common Pleas of Philadelphia County granting the defense request to obtain the new residential address of a complainant/victim and to conduct the in-person interview in her home.  For the following reasons, we deem the appeal reviewable, vacate the order, and remand for further proceedings.

Defendant's preliminary hearing featured the testimony of Complainant, the 61-year-old aunt of Defendant and the Commonwealth's main eyewitness, who related the events of January 7, 2023, that underlie the aggravated assault, unlawful restraint, firearms prohibited, and related charges filed

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has certified that the trial court's order terminates or substantially impairs the prosecution, as required by Pa.R.A.P. 311(d).

against Defendant. Specifically, Complainant testified that she had been staying and partying at Defendant's house for four or five days when he suddenly announced she had to leave by the next day and tossed her belongings out onto the front porch. N.T., 2/28/23, at 5, 10. To her plea that she had nowhere to go, he extended her stay by several days, bluntly telling her, "I want you out by Saturday" and "You can go outside and get your belongings."

Complainant initially replied she was not going outside, N.T. at 6, but she started for the door to recover her things as Defendant was leaving the room. N.T. at 6. Defendant said he knew she was going to do that, and then he asked, "You think I'm playing with you?" N.T. at 6.

Complainant described how Defendant left the room momentarily to beat his dog for several minutes, N.T. at 6, 15, before returning with a handgun. N.T. at 13-16. According to her testimony, it was without provocation that Defendant pointed it at her and fired a shot from about six feet away from where she was sitting. N.T. at 13-16. Complainant testified she could feel the force of the bullet pass alongside her ear, N.T. at 7, and she described how he punched her three times in the chest minutes later when he heard sirens and accused her of calling the police, which she denied. N.T. at 7-8, 16.

Lieutenant Stephen Haraszkiewicz testified that police arrived in response to a 911 call reporting someone being held at gunpoint inside the home. N.T. at 18. According to the lieutenant, the police could hear a female

from inside repeatedly screaming, "He won't let me out, he's got guns in here." N.T. at 19.

Police were "banging on the door" and asking that someone open, but Defendant's refusal led police to call for the fire department's battering ram to open the door, which was fortified with numerous locks. N.T. at 19. Complainant corroborated that Defendant refused requests to open the door. N.T. at 8, 9.

Once the fire department enabled police entry, the lieutenant observed a "distressed, ""visibly upset," and apparently intoxicated Complainant sitting on the futon. N.T. at 22.; N.T., 2/13/24, at 11. Police secured Defendant, the Complainant, and a third man who was present in the home, and they recovered a shell casing lying in plain view on the floor near the futon. N.T., 2/28/23, at 8, 14. They did not, however, recover the shell itself, which Complainant said must have traveled into the kitchen given the direction of the shot. N.T., 2/13/24, at 11. A subsequent execution of a search warrant of the home yielded a 12-gauge shotgun, three Remington and 12-gauge shotgun shells, five live 9mm rounds, one 9mm pistol and one handgun magazine loaded with two 9mm live rounds. N.T. at 26-27. Also discovered among the many bullet holes located throughout the interior of the home was a bullet hole that the Commonwealth posits corresponds with the Victim's account of Defendant firing a gunshot near her head as she sat on the futon. N.T., 11/1/23, at 10-11; N.T. 2/13/24, at 29.

At a bail motion hearing held on November 1, 2023, the Commonwealth asked the trial court to either deny bail, impose home confinement, or at most implement electronic monitoring coupled with neighborhood access only. As support for this request, the Commonwealth not only recalled the significant violence Defendant allegedly directed towards Complainant but also updated the trial court that since the preliminary hearing Complainant was reporting that many friends and relatives shared by Defendant and her were harassing her with phone calls imploring her to end her involvement with the case. The calls were so numerous, the Commonwealth maintained, that Complainant "had to change her phone number." N.T., 11/1/23, at 9. The Commonwealth emphasized that they were now dealing with a main witness who was "genuinely fearful" of Defendant and does not want her contact information released. N.T. at 20.

The trial court expressed caution against automatically implicating Defendant in this attempt to sway Complainant, as it observed, "if we don't have any reason to believe that the defendant was involved in that process, you know, we don't know – it's possible those relatives have their own independent motive for making those same entreaties to the complaining witness." N.T. at 22-23. Nevertheless, given the sum of evidence before it, the trial court ordered house arrest with electronic monitoring. N.T. at 28-33.

Three months later, at the hearing of February 13, 2024, Defendant sought and received a modification to the bail order. In consideration of both his compliant behavior and the pretrial delay his prosecution was

experiencing, the court ordered that Defendant continue house arrest but with a curfew whereby he was he was free to leave his home from 8 a.m. to 6 p.m., with the continuation of the "stay-away" order and the no-contact order currently in place. N.T., 2/13/24, at 58-59.

Defense counsel then broached the subject of his discovery motion in which he requested Complainant's contact information. N.T. at 22. The trial court assumed the request would be limited to Complainant's phone number, but defense counsel clarified he also sought her residential address, which he would not share with Defendant. N.T. at 23.[2] He later confirmed that the "nub" of his request was to reach out and talk with Complainant. N.T. at 61.[3]

_____

[2] To this end, defense counsel indicated he preferred if the trial court would issue a protective order prohibiting him from giving any information about Complainant's whereabouts or contact information to Defendant. N.T., 2/13/24, at 55.

[3] Defense counsel's affirmation that an interview with Complainant was the "nub" of his discovery request led to the Commonwealth's apparent misunderstanding regarding the scope of his requested "investigation," to use his word, of Complainant. "Nub" means the gist, crux, or essence of something, and it appears that is precisely how defense counsel used it and the trial court understood it. The Commonwealth, however, appears to have misconstrued it to mean the interview was just the beginning of a defense investigation of greater scope. We find that neither the definition of the word itself nor the context of the discussion in which defense counsel used the word support the Commonwealth's interpretation. Regardless of the argument that ensued over the Commonwealth's concern with the scope of defense counsel's proposed discovery visit with Complainant, the trial court properly concluded that defense counsel's reference to his "investigation" of Complainant was synonymous with the "interview" that both parties agreed shall and must take place.

The Commonwealth opposed the motion seeking Complainant's new residential address, responding that reasons justifying a heightened concern for Complainant's safety remained, even if the court were prepared to relax its bail order. More specifically, the prosecutor argued that a fearful Complainant would not comply with a request for her contact information. "She doesn't want me to give out her number or her location. But I believe I could arrange [an in-person meeting], if she felt secured in the location and it was just defense counsel. I think I could do that." N.T. at 62-63.

The trial court already had advised defense counsel that the prosecutor "offered that she could arrange for you two [counsel and complainant] to have a face-to-face meeting, or she would attempt to[.]" N.T. at 62. The prosecutor essentially agreed, stating "I would have to talk to the complainant about that, but I think we can arrange for defense counsel to sit down with complainant and conduct a face-to-face interview of her. N.T. at 62.

The trial court turned to defense counsel and asked, "Why wouldn't that meet your needs, Defense?", N.T. at 63, but Defense Counsel balked at the compromise offer of meeting with Complainant in a secure, neutral location, stating incoherently:

> **Defense Counsel:** I do not want to get into – I don't want to think out loud – so I spent years as an investigator for law school. I spent years talking to complainants essentially in cases – it was in a different state and ---.

N.T. at 63.

The prosecutor replied she was doing "everything in my power to set this up, so defense counsel can prepare his case and meet with the witness." N.T. 64. She acknowledged the trial court's reference to the rules of criminal procedure that give it discretion to subject certain information, such as witness names and addresses, to disclosure if it is material to the preparation of the defense and the request is reasonable. Nevertheless, her position was that providing defense counsel with the intended benefit of such information, namely, enabling him to conduct a face-to-face interview with the witness at a neutral location, obviated the need to disclose Complainant's new address:

> **Prosecutor:** I am willing to set up a meeting unless the complaining witness completely refuses in which case, if Your Honor wants me to provide some proof that she's really refusing, I can do that, too, but I believe I can set up a meeting between the witness and defense counsel, for him to prepare for trial, which is the only right he has.

N.T. at 64.

At the close of argument, the trial court granted defense counsel's request for discretionary discovery of the name and address of Complainant, pursuant to Rule 573, with the restriction that counsel is not to share the address information with Defendant or anyone outside of the defense team. N.T. at 65.

The Commonwealth filed a timely motion for reconsideration emphasizing that the order granting defense counsel's oral motion for discovery of Complainant's address erroneously ignored her "unwavering directive to keep her address private because she fears the defendant" based

on their past relationship, in which "defendant had shot at the victim while unprovoked and prohibited from owning firearms" and also "had engaged in criminal activity involving guns and drugs" in the witness/victim's presence. Cmwlth Motion for Reconsideration, 2/23/24, at 2. The trial court denied the Commonwealth's motion. This interlocutory appeal followed.

The Commonwealth presents the following question for this Court's consideration:

> Did the trial court abuse its discretion in ordering the Commonwealth to disclose M.B.'s current address to the defense: (1) without requiring the defendant to explain how the address would materially aid his defense; (2) with no regard for maintaining M.B.'s safety and security; (3) while ignoring less intrusive means of facilitating an interview between M.B. and defense counsel knowing that, if M.B.'s address were disclosed, M.B. would refuse to cooperate and the Commonwealth's prosecution would c[e]ase; and (4) in contravention of Pennsylvania's crime victims' rights act, 18 Pa.C.S. § 11.211?

Opening Brief of Commonwealth, at 5.

We first address whether the discovery order in question is appealable. The trial court indicates it is "at a loss to understand how a discovery ruling requiring the Commonwealth to disclose a witness' address constitutes an order that will 'terminate or substantially handicap the prosecution' such as to permit an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(d)[,]" as the order directed the information be provided only to defense counsel and not to defendant.

On whether certification is proper under Rule 311(d), we have observed:

Pennsylvania Rule of Appellate Procedure 311(d) provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). This Court has stated that "[w]hile the Commonwealth's good faith certification under Rule 311(d) is entitled to some deference, this Court need not accept its good faith certification in every case." *Commonwealth v. Wright*, 99 A.3d 565, 568 n.1 (Pa. Super. 2014); *see*, *e.g.*, *Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871 (2003) (finding that the Commonwealth's appeal from a pretrial ruling that denied its motion *in limine* to exclude certain defense evidence was not appealable under Rule 311(d)); *Commonwealth v. Woodard*, 136 A.3d 1003 (Pa. Super. 2016) (ruling that the Commonwealth's appeal from an order denying its motion to consolidate pursuant to Pa.R.Crim.P. 582 was not appealable under Rule 311(d)); *Commonwealth v. Hamilton*, 2021 WL 225635 (Pa. Super. filed Jan. 22, 2021) (unpublished memorandum) (concluding that a pretrial order denying the Commonwealth's Tender Years motion without prejudice to refile the motion prior to trial was not appealable as of right under Pa.R.A.P. 311(d)).

On the other hand, when a pretrial order has the effect of excluding Commonwealth evidence, this Court is "not permitted" to inquire into the Commonwealth's good-faith certification. *Commonwealth v. Moser*, 999 A.2d 602, 605 n.2 (Pa. Super. 2010). Indeed, "[t]he classic case of an interlocutory order appealable by the Commonwealth as of right ... is one granting a defense motion to suppress evidence." *Commonwealth v. Pownall*, ––– Pa. ––––, 278 A.3d 885, 889 (2022) (citation omitted). "This category covers all types of orders resulting in the suppression or exclusion of Commonwealth evidence[,]" and also "includes orders that have 'the practical effect' of suppressing or excluding evidence." *Id.* (citing *Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 18-19 (1998) (finding that a pretrial order denying the Commonwealth's motion for a continuance to secure the presence of a necessary witness was "sufficiently similar to a suppression order to justify an appeal")).

Additionally, Rule 311(d) is not limited to suppression-related orders, but may also include "other types of orders...." *Id.* (citation omitted).

***Commonwealth v. McKnight***, 305 A.3d 582, 586-87 (Pa. Super. 2023).

Consistent with this jurisprudence, we find the trial court's discovery order has the practical effect of terminating the prosecution, as the Commonwealth certifies it does. The Commonwealth had advised the trial court that Complainant, the only eyewitness to the alleged acts of domestic violence underlying the criminal charges against Defendant, would refuse to cooperate in the prosecution if she were required to divulge her new residential address to the defense. Nevertheless, after a full hearing on defense counsel's discovery motion seeking Complainant's address and contact information—presumptively to enable him to arrange an in-person interview with her on terms acceptable to the defense—the trial court declined the Commonwealth's suggestions for a neutral site, granted defense counsel's motion, and directed that the interview take place at the Complainant's residence—a decision that by every indication offered during the hearing would grind the prosecution of this case to a halt. When viewed in light of our jurisprudence, the court's order has the practical effect of excluding evidence necessary to the Commonwealth's prosecution of its case. Therefore, we find certification is proper under Rule 311(d).

What remains to be decided is whether the trial court's pretrial order granting, over the Commonwealth's objection, defense counsel's motion for discovery of Complainant's new residential address complied with the requirements of Pa.R.Crim.P. 573(B)(2), *Discretionary With the Court*, which confers under subsection (a)(1) discretionary power in the courts to order the

Commonwealth to supply the defense with names and addresses of prospective witnesses if they are material to the preparation of the defense and the request is reasonable:

> (a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (i) the names and addresses of eyewitnesses[]

Pa. R. Crim. P. 573(B)(2)(a)(i). Regarding the burden of proving the requested information is material and reasonable, a defendant must show a reasonable probability that the information gained from the discovery would lead to evidence that would exonerate him. ***Commonwealth v. Garcia***, 72 A.3d 681, 684, 685 (Pa. Super. 2013). More than a mere assertion that the information disclosed might be helpful is necessary. ***Id***.

The trial court opines that it based its decision to grant the defense discovery motion on its finding of fact that in the time since the alleged crime, including the most recent months in which defendant was released on bail, there was no proof that either he or anyone acting at his behest had contacted or attempted to contact Complainant. On this record, the trial court concludes the Commonwealth had not demonstrated an ongoing danger to Complainant and had offered nothing to oppose defense counsel's motion "other than the bald assertions that the complainant is fearful."

- 11 -

The Commonwealth asks whether the trial court abused the discretion afforded under Rule 573 when it issued its order without any indication she was unwilling to attend a neutral interview site. The Commonwealth argues that the requirements placed on Complainant were unreasonable and, thus, non-conforming with the requirements of Rule 573 under the facts.

A "genuinely fearful" Complainant had taken great precautions after her alleged assault to keep confidential her new address from family and associates of defendant out of fear of his reprisals. She changed her phone number in the wake of harassing phone calls and she had given fair notice that she would refuse to cooperate in the prosecution if she were required to reveal her new residential address as part of the process.

The record suggests the parties ostensibly tried to agree on a suitable interview site for defense counsel and Complainant. Defense counsel refused the Commonwealth's offer of the District Attorney's office, and the Commonwealth contested defense counsel's request for Complainant's address and, by implication, any proposal that the interview occur there.

There is no trial court suggestion or directive that the parties strive to agree on an interview site that would accommodate the interests of both the alleged victim of domestic gun violence and the defendant, whose defense team reasonably sought to conduct pre-trial discovery of Complainant in a setting without possible adverse influences.

To the contrary, despite the Commonwealth's endorsement of a neutral site and admonition against divulging the Complainant's new address, the trial

court ordered that the elderly complainant supply defense counsel with her address and admit him into her home to conduct the interview.

On this record, we find the trial court's discovery order requiring a complainant, after being assaulted and thus terrified, to disclose her new residential address to defense counsel failed to meet the requirements of Rule 573. Neither defense counsel nor the trial court has shown how the disclosure was both material to a proper defense and reasonable where circumstances warranted serious concerns of needlessly intimidating this sole witness whose availability for a neutral site interview was otherwise assured by the Commonwealth.

The trial court's stated aim of ensuring a defense interview of Complainant in a setting free from potential observation or influence by the Commonwealth is misplaced and did not depend upon the disclosure of her residential address. The interview was placed in jeopardy by the trial court's order in that the trial court was notified Complainant would withdraw from the prosecution rather than forgoing her personal security by providing her home address to the very person who allegedly assaulted her.

Under the circumstances, it was at the very least manifestly unreasonable, and entirely ridiculous, for the trial court to order the Commonwealth to divulge the Complainant's address to the defense.

Order vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2025